**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BERKLEY MID-ATLANTIC GROUP, LLC, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 13-372 |
| v. | ) ) | Judge Cathy Bissoon |
| G.F. HOCH COMPANY, INC., *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

For the reasons that follow, Defendants' Motion to Dismiss (Doc. 9) will be denied,

without prejudice to Defendants renewing their arguments on summary judgment.

## I. MEMORANDUM

### BACKGROUND

In this diversity action, Plaintiffs are a group of affiliated companies that provide

insurance (at times, collectively, "the Insurer"), and Defendants are insurance agents

("the Agent") who sold Plaintiffs' policies. *See generally* Compl. (Doc. 1-1) at ¶¶ 1-17.

The Complaint references, in passing, an "Agency Agreement" entered between the parties in

December 2007, but the terms of the parties' agreement(s) are not referenced in the Complaint.

*Compare id.* at ¶ 16 *with* remainder of Compl.

Beginning in 2009, the Agent sold the Insurer's policies to a trucking company located in

Pennsylvania ("the Insured"). *See id.* at ¶¶ 19-20. Over the course of two-plus policy years,

the Insurer provided through the Agent commercial motorist insurance for the Insured, including

a "reduced underinsured motorist[, or UIM,] coverage limit" of $50,000. *See generally id.* at ¶¶ 20-30, 32-40. The Insurer alleges that, for each coverage period, the Agent erroneously failed to secure from the Insured (or retain) "a valid written request" for reduced UIM, as purportedly required under Pennsylvania statute. *See id.* at ¶¶ 31, 36, 41 & 48.

During the final coverage period, an employee of the Insured was injured in a motor vehicle accident involving an underinsured driver. *See id.* at ¶¶ 42-43. The employee made a UIM claim under the Insurer's policy, and, according to the Complaint, the Insurer was required to provide full UIM coverage ($1 million) because it did not possess a written request for reduced coverage. *See id.* at ¶ 48. The Insurer settled the underlying claim for $900,000, and it now seeks recovery from the Agent under theories of professional negligence (Count I) and common law indemnity (Count II). *Id.*

In its Motion to Dismiss, the Agent argues that the Insurer's negligence claim is barred by the economic loss doctrine, and it argues that the common law indemnity claim fails under the substantive laws of Pennsylvania. *See* Defs.' Br. (Doc. 10) at 5-7; *id.* at 7-11.

## ANALYSIS

As a threshold matter, the Court must determine which state's law should apply. Regarding choice-of-law, the Agent-Defendants have presumed that either Pennsylvania or Ohio law applies, and the Insurer-Plaintiffs firmly state that Pennsylvania law controls. *Compare* Defs.' Br. at 4-5 *with* Pls.' Opp'n Br. (Doc. 11) at 4-5. Given the parties' agreement regarding the potential application of Pennsylvania law, the Court will apply the law of this forum-state. *See* In re Columbia Gas Sys. Inc., 50 F.3d 233, 240 n.10 (3d Cir. 1995) (where "the parties do not make an issue of choice of law, [the Court has] no obligation to make an independent

determination of what rule would apply if they had made an issue of the matter") (citation to quoted source omitted).[1]

Turning to the substance of Defendants' Motion, Pennsylvania's economic loss doctrine (at times, "ELD") provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage." Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 222 (3d Cir. 2010) (citation to quoted source omitted).[2] As often observed, the precise contours of the Pennsylvania ELD are, at times, blurry, and harmonizing the various state and federal court decisions can be challenging, if not impossible. In many instances, the doctrine's application is strongly influenced by the context in which it is presented, and blending the various tests can easily result in apples-to-oranges comparisons. Compare, e.g., Azur at 223 (interpreting Pa. Supreme Court's decision in Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270 (2005) as creating "narrow" exception to ELD, under Restatement (2d) Section 552, for negligent misrepresentations made by businesses providing information to non-contracting parties for pecuniary gain) with, e.g., Bilt-Rite, 866 A.2d at 288 (stating in dicta that "Pennsylvania has long recognized that purely economic losses are recoverable in a variety of tort actions including . . . professional

---

[1] As referenced above, Defendants' opening brief stated that the laws of either Pennsylvania or Ohio applied. Although their reply brief attempts to shift position, see Doc. 12 at 1 (arguing that Ohio law controls), it is inappropriate for Defendants to raise new arguments in reply, and, even more so for a litigant to abandon prior affirmative statements to the Court once they appear unfavorable. Even had Defendant consistently urged for an application of Ohio law, however, the Court agrees with the choice-of-law analyses in Plaintiffs' briefing, and Pennsylvania law would have been applied in any event. See Pls.' Opp'n Br. at 4-5 (applying Pennsylvania choice-of-law rules to conclude, among other things, that Pennsylvania has most significant contacts and governmental interests in this case).

[2] Given that the Pennsylvania Supreme Court has not definitively established the parameters of the economic loss doctrine, this Court will rely on the federal and state law decisions that it believes best predict how the Supreme Court would rule in this case.

malpractice actions"). The Court takes the law as it finds it, however, and the undersigned is charged with applying the doctrine in the specific context of this case.

The Insurer characterizes its claims as sounding in "professional negligence," and it argues that such claims categorically are exempted from the economic loss doctrine. *See* Pls.' Opp'n Br. at 7-8. Although some court decisions may appear to have painted with such a broad brush (whether advertently or inadvertently), the undersigned is not convinced that the line is so clearly drawn. *Cf., e.g.*, Rapidigm, Inc. v. ATM Mgmt. Servs., LLC, 63 Pa. D. & C.4th 234, 241-42 (Pa. Comm. Pl. Jul. 10, 2003) (noting that Pennsylvania courts have allowed professional negligence actions to be maintained only against certain licensed professionals, and opining that "[t]he decision of whether to restrict professional negligence actions to traditionally-recognized professions or to allow these actions to be brought against any providers of services requiring special skill and training depends on whether parties contracting with service providers should receive the protections of tort law or whether their rights should be governed solely by the terms of their agreement").

Rather than deal in generalities, this Court will focus on the Insurer's specific claims, namely the purported negligence of an insurance agent/broker. Under Pennsylvania law:

> [F]or ordinary negligence purposes, the relationship between an insurance broker and client is an arm's length relationship. . . . In the context of an insurance transaction, . . . an insurance broker is not under an affirmative duty to . . . advise a client regarding the extent of coverage[, but] an insurance broker may be held liable if he/it affirmatively undertakes such duties and then negligently performs, or if a special relationship is present between the parties. . . . Moreover, a plaintiff acquires a cause of action . . . where the broker neglects to procure insurance, . . . does not follow instructions . . ., or if the policy is void or materially defective through the agent's fault.

Allegrino v. Conway E&S, Inc., 2010 WL 3943939, *8 (W.D. Pa. Oct. 6, 2010) (citations, internal quotations and alterations omitted).

The question that remains, though, is whether the aforementioned claims, and Plaintiffs' claims here, flow from duties imposed on insurance professionals as a matter of policy, or whether they flow from a contractual relationship between the parties. *See* <u>In re Asousa P'ship</u>, 2005 WL 775429, *4 (E.D. Pa. Bankr. Feb. 2, 2005) (allowing similar claims to survive dismissal at 12(b)(6) stage because claims "stem[med] from a duty of care imposed by law upon professionals, rather than from a contract between the parties"); *see also, e.g.*, <u>ITP, Inc. v. OCI Co., Ltd.</u>, 865 F. Supp.2d 672, 681-82 (E.D. Pa. Mar. 26, 2012) ("special relationship" and fiduciary-type claims may proceed, independent of contractual obligations, where "the larger social policies embodied in the law of torts rather than the terms of the contract . . . are what underlie [the] claim") (citing and quoting <u>Bohler–Uddeholm America, Inc. v. Ellwood Group, Inc.</u>, 247 F.3d 79, 105 (3d Cir. 2001)). Indeed, this inquiry would appear more appropriately framed under the "gist-of-the-action" test commonly applied in Pennsylvania. *See* <u>Bohler-Uddeholm</u>, 247 F.3d at 104 n.11 (ELD was developed "in the context of . . . products liability tort claims," and "[t]he 'gist-of-the-action' test is a better fit for . . . non-products liability case[s]").

Whether the Insurer's allegations sufficiently invoke "duties imposed as a matter of social policy," as opposed to "duties imposed by mutual consensus" through contract, is one that the Court currently is not equipped to answer. *See* <u>eToll, Inc. v. Elias/Savion Adver., Inc.</u>, 811 A.2d 10, 14-15 (Pa. Super. 2002).[3] The Court cannot properly address these issues because,

---

[3] *Cf., e.g.*, *id.* at 22-23 (rejecting claim of special relationship between "parties to an arms length business contract" based on one's "specialized expertise, skill and experience in the field"; "[i]f parties to routine arms length commercial contracts . . . were held to have a 'special relationship,' virtually every breach of such a contract would support a tort claim") (citation to quoted source and other sources omitted); *cf. also id.* (noting that "[m]ost commercial contracts for professional services involve one party relying on the other party's superior skill or expertise in providing that particular service," and requiring, for purposes of fiduciary duty claim,

first, the Agent-Defendants have not framed their arguments under the gist-of-the-action test, and, second, the parties have offered little information or analysis regarding the contractual relationship(s) existing between them.  In examining whether claims flow from contract as opposed to policy, for example, courts have considered:  (a) whether the claims arise from a contract between the parties; (b) whether the duties allegedly breached were created and grounded in the contract itself; (c) whether the liability stems from a contract; or (d) whether the tort claim essentially duplicates a breach of contract claim or its success is wholly dependent on the terms of the contract.  Morris v. Wells Fargo Bank N.A., 2012 WL 3929805, *11 (W.D. Pa. Sept. 7, 2012) (citing eToll); cf. also, e.g., Murphy Architectural Grp. v. Snyder Moore Agencies Inc., 2009 WL 7268750 (un-paginated) (Pa. Comm. Pl. Nov. 5, 2009) (dismissing claim against insurance broker because, "while the gist of [the] action could well be argued to be negligent performance of the duty imposed, such negligence would not be actionable absent the professional relationship between [the] parties arising out of the contractual relationship").[4]

Given that the Court has been provided little understanding regarding the parties' contractual relationship(s), and given that the Agent-Defendants have not demonstrated that the Insurer-Plaintiffs' cannot, under any plausible reading of the Complaint, assert claims based on policy rather than contract, Defendants' request for dismissal cannot be granted at this time.

---

that "the relationship go[] beyond mere reliance on superior skill, and into a relationship characterized by overmastering influence[,] . . . weakness, dependence, or trust, justifiably reposed") (citation and internal quotations omitted).

[4] Defendants appear to have attached to their Motion papers a nearly illegible copy of the 2007 Agency Agreement.  See Doc. 9-2 at pgs. 19 through 33.  Neither side clarifies or meaningfully analyzes its contents, however, nor does either party contemplate whether there may (or may not) exist other sources of mutual consensus.  Even were the Court able to read the parties' 2007 written agreement, it will not attempt to analyze their contractual relationship(s) in a vacuum.

Denial of the Motion, however, is made without prejudice to renewal of Defendants' arguments

on summary judgment, when a fuller picture is presented.

Next is Defendants' request for dismissal of Plaintiffs' common law indemnity claim.[5]

Under Pennsylvania law:

> [Common law] indemnity . . . [is an] equitable remedy that shifts the entire
> responsibility for damages from a party who, without any fault, has been required
> to pay because of a legal relationship to the party at fault. . . . Common law
> indemnity is not a fault-sharing mechanism that allows a party, whose negligence
> was minor, to recover from the tortfeasor whose negligence was dominant. It is a
> fault-shifting mechanism that comes into play [only] when a defendant held liable
> by operation of law seeks to recover from a defendant whose conduct actually
> caused the loss.

City of Wilkes-Barre v. Kaminski Bros., Inc., 804 A.2d 89, 92 (Pa. Commw. 2002) (internal

citations and footnotes omitted).

In seeking dismissal, Defendants argue that the Plaintiff-Insurers misread the

Pennsylvania Motor Vehicle statute that the Insurers believe required them to provide coverage

in the absence of a "valid written request" for reduced UIM coverage. *See* Defs.' Br. at 8-10.

Plaintiffs have made colorable arguments to the contrary, and, in any event, the Court does not

believe that this issue properly should be resolved under Rule 12(b)(6). All that is required of

Plaintiffs at this stage is to state plausible claims for relief, and, for the reasons stated in their

opposition brief, the Court finds that they survive this low threshold. Defendants' Motion,

therefore, is denied without prejudice to renewal on summary judgment.

---

[5] At the onset, the Court notes that a ruling in Defendants' favor under the ELD or gist-of-the-
action test would extend to Plaintiffs' indemnity claim. *See* Waynesborough Country Club of
Chester County v. Diedrich Niles Bolton Architects, Inc., 2008 WL 687485, *8 (E.D. Pa.
Mar. 11, 2008) (extending ELD to claim for common law indemnity); *see also* Longport Ocean
Plaza Condo., Inc. v. Robert Cato & Assocs., Inc., 2002 WL 436742, *7 (E.D. Pa. Mar. 18,
2002) (holding same because common law indemnity is "a right that depends on [the charged]
party's status as a tortfeasor").

The Court must note, however, that Pennsylvania law will *not* permit common law indemnification if Plaintiffs are found to have been even the slightest bit negligent regarding the procurement of written request(s) for reduced UIM coverage. *See* legal standards cited above. Although it seems questionable whether the Plaintiff-Insurers can convince the Court or a factfinder that it had no duty in this regard, and that they are completely innocent of even the slightest breach, these observations do not form a basis for dismissal under Rule 12(b)(6).

Consistent with the discussions above, the Court hereby enters the following:

## II.  <u>ORDER</u>

Defendants' Motion to Dismiss (**Doc. 9**) is **DENIED** without prejudice to the renewal of their arguments on summary judgment.

IT IS SO ORDERED.


November 20, 2013                                      s\Cathy Bissoon
                                                                   Cathy Bissoon
                                                                   United States District Judge

cc (via ECF email notification):

All Counsel of Record